IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ROBERT G. WING, as Receiver for VESCOR CAPITAL CORP., a Nevada corporation, VESCOR CAPITAL, INC., a Nevada corporation, VESCORP CAPITAL, LLC, a Nevada limited liability company, VESCORP CAPITAL IV-A, LLC, a Nevada limited liability company, and VESCORP CAPITAL, IV-M, LLC, a Nevada limited liability company,<br><br>    Plaintiff,<br><br>vs.<br><br>JONATHAN H. HORNE, an individual, OAK VALLEY INVESTMENTS, L.P.,<br><br>    Defendants. | MEMORANDUM DECISION<br><br>AND ORDER<br><br><br><br>Case No. 2:08-CV-00717 |

On January 30, 2009, Defendants Jonathan H. Horne and Oak Valley Investments, L.P. (Collectively, "Horne") filed for summary judgment on the basis that the Receiver's fraudulent transfer claims fail as a matter of law. During a hearing covering that motion on May 14, 2009, this Court granted Defendants Jonathan H. Horne and Oak Valley Investments, L.P. (Collectively, "Horne") leave of court to file a motion in this case to brief the issue of whether Horne's interested in an interpleader account in *Vescor Capital, et al. v. Valle Verde Limited*

1

*Partnership, et al.*, No. 2:07-CV-00363 (D.Utah, June 1, 2007) [the *VesCor Interpleader*], which Horne acquired at an execution sale after securing judgment against Val Southwick and his VesCor companies, trumped the Receiver's interest in those interpleader funds. On May 15, 2009, Horne filed a motion for declaratory relief arguing that the Receiver's interest in the interpleader account was severed as a result of the execution sale and challenging the Receiver's standing to appear in the interpleader action. The Court held a hearing covering this motion on Wednesday, July 29, 2009. The Receiver, Robert G. Wing, was present and represented by M. David Eckersley; Defendant Horne was represented by Jerome Romero.

## I. Factual Background

This action is one of many arising out of the collapse of an alleged Ponzi scheme orchestrated and run by Val Edmund Southwick through a complex web of over 150 corporations and limited liability companies. The Court appointed Robert G. Wing as Receiver for VesCor Capital Corp., VesCor Capital, Inc., VesCorp Capital, LLC, VesCorp Capital IV-A, LLC, VesCorp Capital IV-M, LLC, and all affiliated limited partnerships, corporations or other business entities (collectively, "VesCor"). The Receiver filed the present suit on September 22, 2008, seeking the return of the rights Dr. Horne claims to have acquired to an interpleader account on April 25, 2008 through a $5,000.00 credit bid. Horne does not dispute the Receiver's allegation that the VesCor entities were operated as part of a Ponzi scheme. *See Oak Valley Investments, L.P. v. Val E. Southwick, VesCor Capital Corp., & VesCor Devel., LLC*, No. 2:06-CV-00737 (D. Utah, Feb. 13, 2008) [the *Oak Valley* case], Oak Valley's Memorandum in Support of Motion for Partial Summary Judgment, at 2, dkt. 44 (Nov. 28, 2006) ("The

unfortunate reality for Oak Valley is that it has invested its funds in an elaborate, complex ponzy [sic] scheme").

Like so many of Southwick's victims, Horne's experiences with VesCor have not been pleasant. He invested approximately $2,700,000 in the VesCor scheme in 2005 and 2006. Shortly after Southwick's scheme collapsed, Horne initiated litigation against VesCor seeking damages and eventually secured a judgment in the amount of $2,995,441.00 on February 13, 2008. *See id.*, Judgment, dkt. 282, 283 (Feb. 13, 2008). That judgment was the result of two stipulations entered into between Horne/Oak Valley Investments and Southwick. *See id.*, dkt. 280-283.

In the meantime, on June 5, 2007, VesCor sold two commercial real estate buildings to a third party. Pursuant to that sale, an escrow account was created for the benefit of One Mortgage Limited, a VesCor entity. These funds were deposited in the *VesCor Interpleader*.

On April 24, 2008, the Salt Lake County Constable's Office sold VesCor's interest in the funds in the interpleader account at a public auction to Horne through a credit bid of $5,000.00. On July, 2, 2008, Horne moved to substitute himself in the place of VesCor Capital Corporation in the interpleader action. *VesCor Interpleader*, dkt. 64. The Court denied this motion on November 13, 2009. *VesCor Interpleader*, dkt. 73. On November 21, 2008, the Receiver moved to transfer the funds from the interpleader and to release funds for use by the receivership. *VesCor Interpleader*, dkt. 74. In response, on December 12, 2008, Horne again moved to substitute himself for Vescor Capital Corporation in the interpleader action as the real party in interest. *VesCor Interpleader*, dkt. 76. On January 29, 2009, the Court denied Horne's motion to

substitute and granted the Receiver's motion to release the funds to the receivership estate, holding generally that because the underlying contracts were part of an illegal enterprise that they could not be enforced. *VesCor Interpleader*, dkt. 81.

## II. Discussion

Both parties to the present motion claim to "stand in the shoes" of VesCor's right, title and interest to the funds in the *VesCor Interpleader*. Horne argues that under Utah law, the execution sale effectively severed VesCor's interest in the funds in the interpleader account and that as a result Horne, not the Receiver, is entitled to stand in VesCor's shoes for the purpose of pursuing the those funds. The Receiver counters that he stands in slightly different shoes than Horne does because he, unlike Horne, took control of the funds for the benefit of all of the investors defrauded by Southwick's scheme. Furthermore, the Receiver claims that the passage of the interest in the interpleader funds from the VesCor entities to Horne involved three avoidable fraudulent transfers: (1) the transfer of the funds from VesCor into the interpleader account at the outset of that action; (2) the stipulation between VesCor and Horne which resulted in judgment being entered in the amount of $2,995,441.00 on February 13, 2008 against VesCor in the *Oak Valley* case; (3) the transfer of the interest in the funds in the interpleader account at a public auction on April 24, 2008 through a credit bid of $5,000.00.

The cases support the Receiver's notion that a federal equity receiver appointed in the aftermath of a Ponzi scheme does not merely stand in the perpetrator's shoes when recovering the assets of the defrauded investors. The *Scholes v. Lehmann* case, for example, expressly notes that corporations under the "spell" of a Ponzi scheme perpetrator enjoy far more limited legal

rights than they do once the perpetrator is ousted by a Receiver. 56 F.3d 750, 754 (7th Cir. 1995). *Scholes* explains that while the maker of a fraudulent conveyance is normally bound by it, that rationale falls away once the Ponzi operator "has been ousted from control of and beneficial interest in the corporations." *Id.* ("The appointment of the receiver removed the wrongdoer from the scene. The corporations were no more Douglas's [the Ponzi operator's] evil zombies. Freed from his spell they became entitled to the return of the moneys–for the benefit not of Douglas but of innocent investors–that Douglas had made the corporations divert to unauthorized purposes."). Other cases support this approach. *See, e.g.*, *SEC v. Cook*, No. CA 3:00-CV-272-R, 2001 WL 256172, at *2 (N.D.Tex., Mar. 8, 2001) ("[W]hile the general rule is that the receiver may only bring actions that could have been brought by the entity in receivership, "there are certain situations where the receiver is permitted to assert rights and defenses not available to the insolvent." (quoting *Butcher v. Howard*, 715 S.W.2d 601, 604 (Tenn. Ct. App. 1986))).

Distinguishing between Horne's and the Receiver's standing in this way makes sense considering the important role receivers play in the aftermath of fraud schemes. The mere act of appointing a receiver is, after all, a "drastic and extraordinary remedy." *See, e.g., Ferguson v. Tabah*, 288 F.2d 665, 673 (2d Cir. 1961) (describing a receivership as a "drastic remedy usually imposed only where no lesser relief will be effective"); *Citibank, N.A. v. Nyland, Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988) (stating that a receivership is an extraordinary remedy that should be "employed cautiously and granted only when clearly necessary to protect plaintiff's interests in the property"). The use of this drastic remedy is, however, appropriate in the aftermath of a securities fraud scheme. *See SEC v. Wencke*, 622 F.2d 1362, 1373 (9th Cir. 1980). The *Wencke*

court noted the particular challenges faced by receivers in such actions:

> A receiver appointed by a court in the wake of a securities fraud scheme may encounter difficulties sorting out the financial status of the defrauded entity or entities. There may be a genuine danger that some litigation against receivership entities amounts to little more than a continuation of the original fraudulent scheme. Similarly, the securities fraud may have left the finances of the receivership entities so obscure or complex that the receiver is hampered in conducting litigation. Moreover, the expense involved in defending the many lawsuits which often are filed against an entity in the wake of a securities fraud scheme may be overwhelming unless some are temporarily deferred.

*Id.* Furthermore, and certainly in part due to the above challenges faced by receivers in these types of cases, district courts are given broad discretion in their supervision of equity receivers. *See, e.g.*, *United States v. Stonehill*, 83 F.3d 1156, 1159 (9th Cir. 1996) (reviewing a district court's supervision of an equitable receivership for an abuse of discretion); *SEC v. Black*, 163 F.3d 188, 199 (3d Cir. 1998) ("[W]here there is a receiver with equitable power in a proceeding before it, the District Court has wide discretion as to how to proceed"); *FDIC v. Bernstein*, 786 F. Supp. 170, 177 (E.D.N.Y. 1992) ("[O]ne common thread keeps emerging out of the cases involving equity receiverships–that is, a district court has extremely broad discretion in supervising an equity receivership."). As a result, both the cases involving Ponzi schemes and the law regarding the establishment and supervision of federal equity receiverships support the notion that a receiver's rights of recovery are greater than those possessed by the perpetrating entities (and those who purport to stand in their shoes alone).

Horne has never argued that this Court erred on May 5, 2008, when it appointed a Receiver in *SEC v. VesCor Capital Corp.*, No. 1:08-CV-00012, to marshal and preserve the assets of the VesCor entities. Absent the appointment of a receiver, there was a significant risk

that the litigation against Southwick and his entities would continue in a piecemeal fashion, result in a decrease in the assets available for distribution to investors, creditors, and/or others with claims against Southwick, and leave open the possibility that the assets might be distributed in a manner that is not fair and equitable to all investors. Furthermore, the Court was on notice that VesCor's management had committed a complicated and egregious fraud, that the VesCor entities owned real property in several states, and that a receiver was necessary to trace, recover, distribute, and administer these assets in a manner calculated to yield the best possible recovery for all investors. These facts clearly necessitated the drastic remedy of appointing a receiver. Once appointed, the Receiver had both the right and duty to use his augmented powers (vis a vis those possessed by the VesCor entities) to ensure the best possible result for all of VesCor's investors and creditors.

Horne understandably argues that his purchase VesCor's interest in the interpleader action at an execution sale nevertheless severed the Receiver's interest in that interpleader account. Under Utah law, it is well-established that a chose in action, such as VesCor's interest in the interpleader account, may ordinarily be acquired at an execution sale to satisfy a judgment. *See* Utah R. Civ. Pro. 69(f); *RMA Ventures California v. SunAmerica Life Insurance Co.*, No. 08-4035, 2009 WL 2436669, at *4 (10th Cir., Aug. 11, 2009) (concluding that Plaintiff lacked standing after Defendant was able to purchase Plaintiff's legal right to continue the appeal at a public execution sale); *Applied Medical Technologies, Inc. v. Eames*, 2002 UT 18, 44 P.3d 699 (holding that the defendant could dismiss pending claims against itself after legally purchasing those claims at a sheriff's execution sale); *Snow, Nuffer, Engstron & Drake v. Tanasse*, 1999 UT

49, ¶ 11, 980 P.2d 208 (noting that Utah's "writ of execution rules are quite broad," but holding that "it is against the public policy of Utah for a law firm to purchase in an execution sale a legal malpractice cause of action that has been filed against it").

Furthermore, upon completion of the execution sale, the "new party steps into the shoes of the former plaintiff, and the claims remain cognizable, but the sale cuts off the former plaintiff's right to pursue those claims." *Applied Medical*, 2002 UT at ¶ 17 ("Once acquired by another, the new litigant has the right to determine the course and scope of the litigation of the claims purchased, including the right to move to dismiss the pending claims."). Accordingly, Horne believes that by the time the Receiver was appointed on May 5, 2008, the Receivership no longer possessed any right to pursue VesCor's interest in the interpleader funds. *See, e.g.*, *RMA Ventures*, 2009 WL 2436669, at *4; *Applied Medical*, 2002 UT at ¶ 17; *Tanasse*, 1999 UT at ¶ 10-11.

None of those cases, however, address the validity of an execution sale of a chose in action which was instituted by entities operating a Ponzi scheme in an effort to distribute funds pursuant to a fraudulent contract entered into by those entities. Indeed, the *Applied Medical* court, in affirming the validity of the execution sale at issue in that case, noted that "[n]either party has alleged that the agreement between [the parties] regarding the formation of Applied Medical and the disbursement and allocation of shares in Applied Medical was anything but an arm's-length business transaction." *Applied Medical*, 2002 UT at ¶ 21. Just as public policy prevents a law firm from purchasing and dismissing a malpractice claim pending against it, *see Tanasse,* 1999 UT at ¶ 11, so too does it prevent a party from purchasing and pursuing a claim

which it knows is based on something other than an arm's length business transaction.

In the present case, Horne was well aware that Southwick operated the VesCor entities as part of an elaborate Ponzi scheme. He knew that through his successful credit bid of $5,000, on April 28, 2008, he was only acquiring a known Ponzi scheme entity's rights to certain funds. Horne undoubtedly was also aware that the those rights hinged upon the enforceability of contracts that were part and parcel of that Ponzi scheme, and that the funds themselves rightfully belonged not to VesCor, but to the investors and creditors defrauded by Southwick's fraudulent scheme. Horne is essentially asking the Court to lift the stay in the interpleader action and allow him to litigate what portion of the defrauded investor funds belonged to VesCor at the time Horne purported to obtain VesCor's rights by virtue of the execution sale. But VesCor simply has no legal claim to any of the funds it had swindled from investors. Furthermore, Robert G. Wing, not Horne, is the Receiver in this case, and only the Receiver is able to bring claims on behalf of investors.

Accordingly, if VesCor has no legitimate claim to any of the money held in the *VesCor Interpleader*, then the interest Horne acquired in the *Vescor Interpleader* by virtue of the execution sale is worthless. However, if, contrary to the Receiver assertions (and Horne's admissions), VesCor's interest in the interpleader is determined at a later point to be a valid, legitimate, and non-fraudulent, Horne's interest in the portion of those funds which are legitimately due to VesCor should be honored. Accordingly, though Horne cannot prevail on either his Motion for Summary Judgment or his Motion for Declaratory Relief at this time, Horne's interest in the *VesCor Interpleader* should attach as a lien on those funds in the hands of

the Receiver, the validity of which will be determined at a later time by the Court.

### III. Conclusion

For the foregoing reasons, Horne's Motion for Declaratory Relief and his Motion for Summary Judgment are DENIED.

**IT IS SO ORDERED.**

DATED this 4th day of September, 2009.

Judge Dee Benson
United States District Court